[Civ. No. 2414.   Third Appellate District.—April 20, 1922.]

## R. E. S. HESSE, Appellant, v. MERCED SECURITY SAVINGS BANK (a Corporation), Respondent.

[1] CONTRACTS — PROMISE TO PAY MONEY—ACTION FOR—EVIDENCE — FINDINGS.—In this action based upon an alleged promise by defendant to pay plaintiff's assignor a specified sum of money, while the evidence was in part conflicting the trial court was justified in finding that the defendant did not make the alleged promise to pay plaintiff's assignor the sum of money sued for or any sum.

APPEAL from a judgment of the Superior Court of Merced County.   E. N. Rector, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Earl A. Bagby for Appellant.

F. W. Henderson for Respondent.

FINCH, P. J.—The complaint alleges that the defendant agreed to pay plaintiff's assignor $1500 "from a special fund, then and there being by said defendant and one J. E. Lee provided for that purpose, said payment to be made by the said defendant immediately upon receipt by defendant of said fund which said fund was . . . in the amount of $7000.00 or thereabouts"; that the defendant thereafter received such fund but refused to pay plaintiff the sum promised and converted the fund to its own use; "that the said special fund consisted of moneys then due and payable by the California State Highway Commission on account of the contract of said J. E. Lee with said commission for the construction" of a certain highway. The answer denies the allegations of the complaint. The court found the foregoing allegations of the complaint to be untrue and rendered judgment for the defendant.

[1] The defendant was supplying Lee with money to carry on his highway contract and had furnished him large sums for that purpose, taking as security a mortgage on his personal property, tools, and equipment and an assignment of moneys due and to become due under the contract. Lee had purchased two trucks from plaintiff's assignor on the monthly payment plan and several installments were due and unpaid on May 22, 1920. On that day A. Woods, representing the seller, indicated to the officers of defendant that it would be necessary to take the trucks, which were being used on the work, from Lee's possession unless arrangements were made for payment of part of the overdue installments. Certain payments were then due on the highway contract and Woods called up the state engineering department to ascertain the amount thereof and the time when payment would be made. From this point forward the evidence is conflicting.

Woods testified that he informed the bank officials that he had received information from the state engineering department that checks would be mailed to Lee that afternoon

for payments due. He further testified: "I asked Mr. Stoddard if he would pay a check on Mr. Lee of $1500 on the arrival of the money . . . coming from the state at that time and he said he would pay it and that would not put Mr. Lee's overdraft any higher than it was at that time and I . . . did secure a check of Mr. Lee. . . . They [the bank officials] informed me, in those estimates, I think they called them, there was approximately $7000. . . . Stoddard made the statement at that time that he did not wish to carry Mr. Lee for any more money at that particular time, but would pay a check of $1500 or pay the amount of $1500 when these estimates that were presumably coming from Sacramento arrived."

H. B. Stoddard, defendant's cashier, testified: "He [Lee] was overdrawn on May 22d $3345.26. . . . Mr. Woods assured us that a check was being mailed from Sacramento for $7000.00; at one meeting he said the check had been mailed. . . . We agreed to pay that check if we got the money from the state that he said had been mailed to us at that time. . . . The promise was conditional, that if we received that money from the state that he said was being mailed to us, that would put Mr. Lee's account in such shape we could pay his check." M. D. Wood, vice-president and manager of defendant, testified: "I stated to him at that time that we would recognize a check of Lee in his favor or his firm's favor when Lee had the money to his credit to pay it. . . . At the time Mr. Woods was there, he said the money was coming from the state right away, which would take up the overdrafts. . . . I did not tell him anything except what I have already stated, that we could not recognize any checks against Lee's account until he had the money to pay outside of the labor proposition. . . . I mean preferred claims, anything that was a preferred claim. . . . Such claims as can be filed against the job, before the labor commissioner, for instance. . . . I did not know, as a matter of fact, what money was coming from the state to Mr. Lee, because the money always went to Lee; it did not come to the bank." The anticipated payment by the highway commission was not received and deposited with the bank until May 28th, and then only in the sum of $3,565.33. In the meantime the bank had continued to pay Lee's checks for labor and material, so that on May 28th, after crediting

Lee's account with the $3,565.33, it showed an overdraft of $1,068.02. The $1,500 check was not presented to the bank for payment till about the middle of June and at that time Lee's account was overdrawn. While Lee later deposited other sums with defendant, at no time after May 22d did he have sufficient funds to the credit of his account to pay the check.

From the foregoing evidence it is clear that the court was justified in finding that the defendant did not make the alleged promise to pay plaintiff's assignor $1,500 or any sum.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.